[Civil No. 4591. Filed May 7, 1945.]

[158 Pac. (2d) 657.]

L. M. BYRD, Executor of the Estate of Rudolph Luis Balke, Deceased, Appellant, v. PHOENIX SAVINGS BANK AND TRUST COMPANY, Co-executor of the Estate of Rudolph Luis Balke, Deceased, Appellee.

Messrs. Struckmeyer & Struckmeyer, for Appellant.

Messrs. Fennemore, Craig, Allen & Bledsoe, for Appellee.

STANFORD, C. J.—This appeal comes to us from an order and judgment of the Superior Court of Maricopa County, Arizona, in the matter of the estate of Rudolph Luis Balke, deceased.

Balke died March 30, 1929. His will was filed for probate in said court on April 17, 1929, and admitted to probate. Appellant and appellee were nominated as co-executors and trustees under the will. They were duly appointed as co-executors.

In main the assets of the estate consisted of a store and office building in the main part of the City of Phoenix, namely, on the northeast corner of Adams Street and First Avenue, consisting of two lots, 100 feet on Adams Street and 150 feet on First Avenue, all of which property is used for business purposes and embraces several places of business.

By the will it was authorized that the estate be kept open in order that satisfactory sale of the property might be made. In this respect the testator stated in the will: "I feel that said property should bring the sum of $250,000."

After thirteen years of service by this co-executor, appellee, on the 20th day of April, 1942, it resigned and submitted its final account and petition for compensation, both ordinary and extraordinary. The probate court at the hearing of the final account and the petition for allowance of fees, allowed the appellee the sum of $6,000 as its statutory fee and commission, and the sum of $8,300 for extraordinary services. To that order of the trial court the appellant filed his objections to the allowance of the fees allowed for extraordinary services.

The appellee sets forth in its account on resignation and petition for allowance of compensation:

"That as disclosed by the files and records in this matter, the administration of this estate had been in progress for a period of thirteen years, during which time, in addition to the ordinary services rendered by your petitioner as such co-executor, extraordinary services were required of and performed by your petitioner as such co-executor, made necessary because of the extensive litigation instituted and prosecuted by claimants against said estate, all of which appears from the files and records herein, to which reference is hereby made, and because of the necessity of the making and renewal of loans from time to time, and the presentation to this Court of applications for author-

ity so to do; that in addition to the foregoing your petitioner, during the course of the administration of said estate thus far, has assumed full responsibility for the collection of rentals for the property belonging to said estate, and has had the sole burden of the keeping of books and accounts relating to the affairs of said estate, the payment of taxes, the looking after of insurance policies upon the property of the estate, the payment of premiums thereon, the payment of mortgage loan installments of principal and interest, the preparation and filing of State inheritance and Federal estate tax returns, the preparation and filing of State and Federal Income tax returns, the preparation of the itemized annual accounts and reports filed herein, and the handling of all correspondence concerning the business of said estate; . . . .''

The matter for this court to determine on appeal is the correctness of the court's order and judgment allowing the fees for the extraordinary services mentioned. It is not the amount of extra fees allowed objected to, but the propriety of the court making such allowances.

On the question under consideration the appellant helpfully states to us that he is

''mindful of the rule announced by this court that compensation allowed an executor is a matter peculiarly within the knowledge of the court before which the estate was probated and in the absence of the abuse of sound discretion of the court will not be reversed on appeal.''

Supporting his contentions appellant cites the following from the case of *State* v. *Lewis,* 113 Or. 359, 230 Pac. 543, 544, 232 Pac. 1013:

''Discretion is the power exercised by courts to determine questions to which no strict rule of law is applicable, but which, from their nature and the circumstances of the case, are controlled by the personal judgment of the court. 1 Bouvier's Law Dict. p. 884. It cannot be exercised where a strict rule of law is applicable, as the term 'discretion' implies the ab-

sence of any such rule. Where there is a clearly-defined and well-settled applicable rule of law, the courts are bound to enforce the rule, and discretion is at an end. Discretion, however, is not an arbitrary and unrestricted power, but must be exercised according to fixed and settled rules. (Citing cases.)''

In this respect the appellant also cited the cases of *Southern Arizona Freight Lines* v. *Jackson,* 48 Ariz. 509, 63 Pac. (2d) 193, and *Sharpensteen* v. *Sanguinetti,* 33 Ariz. 110, 116, 262 Pac. 609.

Appellant complains that many of the services set forth in the petition for allowance of an extra fee are things that should be done under the common and ordinary duties of an executor. Among the matters mentioned by appellant are the following: renewal of loans, assuming full responsibility for collection of rentals, burden of keeping books for accounts relating to the affairs of the estate, payment of taxes, looking after insurance, payment of mortgage loans installments, preparation of state inheritance and federal estate tax returns, preparation and filing of state and federal income tax returns, preparation of itemized annual accounts and handling all correspondence. In support of the foregoing appellant quotes from the case of *Estate of O'Reilly,* 27 Ariz. 222, 231 Pac. 916, 918:

''We are of the opinion that the statute providing commissions for executors and administrators contemplated the performance of some service on the part of such officers for which the fee is to be paid. . . .

''Fair compensation should be allowed officers in the administration of an estate for services actually performed, but it is also the duty of the court to safeguard the property of the estate, and not countenance claims in the absence of reasonable justification.''

As a definition of extraordinary services appellant quotes Bancroft's Probate Practice, Vol. 2, Sec. 419, p. 788:

" . . . beyond or out of the common order or rule; not usual, regular, or of a customary kind; not ordinary; remarkable; uncommon; rare. . . . "

Section 38–1404, Arizona Code Annotated 1939, is as follows:

"*Compensation for services.*—When no compensation is provided by the will, or the executor renounces the same, he shall be allowed commissions upon the amount of the whole estate, accounted for by him as follows: For the first thousand dollars ($1,000), seven (7) per cent; for all above that sum and not exceeding ten thousand dollars ($10,000), five (5) per cent; for all above that sum four (4) per cent; and the same commission shall be allowed administrators. Further allowance may be made as the court may deem just and reasonable for any extraordinary service."

In the case of *Busenbark* v. *Smith,* 55 Ariz. 1, 97 Pac. (2d) 533, 534, the administratrix, in her final account, charged the estate with $3,000 for extraordinary services for herself, and the same amount for extraordinary services for her attorneys. The heirs contested the amounts. At the hearing the court approved the administratrix's claim for the sum of $1500, and the claim of the attorneys for $2,000. The point raised in that case, which is important for us to follow in the instant case, is set forth in the following language:

"The compensation allowed the administratrix for extraordinary services under Section 4051 (38–1404, Arizona Code Annotated 1939) is also left to the discretion of the probate court, and what we have said above about the finality of such discretion, when judicially exercised, applies. *In re Parker's Estate,* 186 Cal. 671, 200 Pac. 620; *In re Keith's Estate,* 16 Cal. App. (2d) 67, 60 Pac. (2d) 171; *In re Hardenberg's Estate,* 18 Cal. App. (2d) 307, 63 Pac. (2d) 1200."

From the case of *In re Neff's Estate,* 56 Cal. App. (2d) 728, 133 Pac. (2d) 413, 415, decided in 1943, we quote the following:

"In making its order fixing such fees, the court has a large discretion, and when the court has made its determination in respect thereto, its judgment will not be interfered with on appeal, except only in the face of a plain abuse of discretion. (Citing cases)."

■ In quoting from the Neff case, *supra,* we do so with the knowledge that our court has often given expression to the statement set forth in our case of *In re Nolan's Estate,* 56 Ariz. 366, 108 Pac. (2d) 391, 394, wherein we said:

"Our probate law is taken from California and we have frequently followed the courts of that state in its construction. . . . "

■■ Should the probate of an estate be closed in our state at the end of one year, the executor or administrator would be entitled to the fee fixed by our statute. In the instant case it appears from the record before us, and from our knowledge of the probate statutes, that as much service was rendered for each of the twelve years following the first year, as was rendered the first year in handling the estate. In some of those years it appears as though more service was rendered. It occurs to us that extraordinary services were rendered in this case by reason of the duration of the probate proceedings and the great amount of extra work that was entailed.

In the instant case, however, the executor, to some extent, might have seen from the will that the estate had to be kept open until the property in question was sold. The executor, under such circumstances, had the right to renounce the appointment as such. This was not done, but still the executor could not anticipate that the estate would be held open indefinitely.

■ We make this statement as to this particular case without attempting to set a rule applicable to all cases where the circumstances, over a period of a year or more, might induce attorneys and executors to ap-

ply for an additional fee. We insist that each case in that respect should be determined on the facts presented.

■ Our foregoing statement impels us to quote from the case of Estate of O'Reilly, *supra:*

"What would constitute a reasonable fee in a given case is a matter which is peculiarly within the knowledge of the court before which the estate was probated, and, in the absence of the abuse of sound discretion of the court sitting in probate, this court, as it has many times held, will not disturb the findings of the lower court."

■ Many of the items referred to by appellant are not for services that an executor would ordinarily have to perform. For example, in recent years, later than some of the cases cited, the question of making out income tax reports is generally a thing that is left to an expert and for which additional charges are made. No doubt the appellee has experts in its institution who do make such reports. Also in the matter of renewal of loans, this particular appellee, by reason of its business, is peculiarly capable in that respect. No doubt the testator knew this when the appointment was made, but that would not require this appellee to give extra time to such matters without further compensation.

■ In the final analysis, the matter of additional compensation must be left to the discretion of the probate court.

We quote from the case of *In re Scherer's Estate,* 58 Cal. App. (2d) 133, 136 Pac. (2d) 103, 109:

"The allowance of extraordinary fees is a matter of discretion with the trial court and is not to be interfered with on appeal except for abuse. Such discretion not only invests the trial court with the power to determine whether the character of the services is such as to warrant extra compensation, but to determine the amount. In *Estate of Pomin,* 33 Cal. App. (2d)

544, 546, 92 Pac. (2d) 479, 480, it was said: 'We are of the opinion a probate judge, who has before him all of the proceedings of an estate, together with evidence of the exact nature of extraordinary services, performed incident to probating it, is not bound to fix the compensation therefor, under Section 902 of the Probate Code, at the estimated value testified to by expert witnesses produced by the executor, even though no witness is called to dispute their opinions in that regard. It is the province of the trial judge, under such circumstances, in the exercise of sound discretion, to determine the weight of the evidence and the value of the services performed and to allow the executor or attorney such sum "as the court may deem just and reasonable for any extraordinary services." Sec. 902, Probate Code.'

"In *Estate of Keith,* 16 Cal. App. (2d) 67, 70, 60 Pac. (2d) 171, 172, which involved an appeal from an order allowing extraordinary fees, it was held 'In a probate matter, it is particularly within the power of the trial judge, who has all of the records before him, to fix and determine what fees are proper. *Estate of Vaughan* (14 Cal. App. (2d) 594), 58 Pac. (2d) 742. Section 910 of the Probate Code provides that attorneys for executors shall be allowed such amount as the court "may deem just and reasonable for extraordinary services." It is the duty of the court to determine whether or not services denominated "extraordinary" were necessarily required in the administration of the particular estate, and if so, to decide what would be a just and reasonable allowance. In making its order fixing such fees, the court has a large discretion, and when the court has made its determination in respect thereto, its judgment will not be interfered with on appeal, except only in the face of a plain abuse of discretion. 11-B Cal. Jur. 506, § 1056; *Estate of Parker,* 186 Cal. 671, 200 Pac. 620; *Estate of Iser,* 52 Cal. App. 405, 198 Pac. 1014.' "

We think the appellee's case is reasonably supported by the evidence. We find no abuse of discretion by the trial court. Accordingly the order appealed from is affirmed.

LaPRADE and MORGAN, JJ., concur.