Filed 10/14/15  Estate of Maciel CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| Estate of JOSEPH D. MACIEL, Deceased. | B258896 |
| | (Los Angeles County Super. Ct. No. BP103761) |
| JAMES D. MACIEL, SR., <br><br> Objector and Appellant, <br><br> v. <br><br> MARK MACIEL, <br><br> Plaintiff and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Roy L. Paul, Judge.  Affirmed as modified with directions.

James D. Maciel, Sr., in pro. per., for Objector and Appellant.

No appearance for Plaintiff and Respondent.

# I. INTRODUCTION

The objector, James D. Maciel, Sr., appeals from a July 29, 2014 order settling the amended first and final account and report of plaintiff, Mark Maciel. Plaintiff provided an account and report of real property belonging to the Estate of Joseph D. Maciel pursuant to a court order. On appeal, the objector contends the total surcharges against plaintiff were not calculated correctly. In addition, the objector challenges the probate court's approval of attorney's fees and costs to plaintiff's attorney. We conclude the total surcharges sum fails to include the disallowed funeral expenses. Once our remittitur issues, the probate court is to modify the July 29, 2014 order. The probate court is to add the disallowed funeral expenses to the total for all surcharges and disallowed disbursements ordered against plaintiff. As corrected, the July 29, 2014 order is affirmed in its entirety.

# II. BACKGROUND

On April 3, 2012, the probate court ordered plaintiff to provide an account to his brothers. Plaintiff's two brothers are the objector and David Maciel. The probate court appointed John Gottes as the estate's administrator on August 3, 2011 but later accepted his resignation on June 12, 2012. On November 8, 2012, plaintiff filed his first amended first and final account and report for real property located on Angel Street in Norwalk.

On January 16, 2013, plaintiff filed a verified first supplement to the first amended first and final account and report. Plaintiff's account covered the period from October 26, 2005 through December 31, 2012. The estate had cash assets of $29,697.61 and real property valued at $390,000. The estate received $219,849.74 comprising of: $78,775 in rental income; $99,000 in proceeds from a Chase equity line of credit; and $42,074.74 in net proceeds from a First Magnus refinance. The First Magnus loan was for $106,000. Of that amount, $59,154.64 was used to pay off a prior $60,000 General Motors Acceptance Corporation loan. The estate's total disbursements were $189,427 including

$8,300 for funeral expenses and $1,150 in accounting service fees. Plaintiff sought compensation of $10,500 as the "de facto" administrator of the estate and $5,896.50 for managing its real property. In addition, plaintiff requested attorney's fees of $7,262.50 and costs of $455. Plaintiff retained the services of the Law Offices of Bunt & Shaver, LLP to assist him with the preparation of the account and report.

After a four-day trial on plaintiff's accounting, the probate court issued a minute order on February 27, 2013. The order was later modified by a May 31, 2013 probate court order. The May 31, 2013 probate court order states: "The court, on its own motion, orders the minute order of February 27, 2013 modified, as to the items listed below only, as follows: [¶] 1. $10,715 liability- denied for expenses paid by [plaintiff] for the brick porch. [¶] 2. $18,000 liability- denied for completion of remodel. [¶] 3. $7,262.50 for Law [O]ffice of Bunt & Shaver- approved plus cost of $455 for fees and costs in preparing accounting. [¶] 4. The Court finds: funeral expenses to be in the amount of $5,374 and surcharges [plaintiff] $2,926 difference. [¶] 5. The Court orders [plaintiff] to pay to the estate, for surcharges for funeral expenses, $2,926. [¶] 6. Accountancy expenses are approved in the amount of $1,150. [¶] 7. At the time the real property was acquired by [plaintiff], it was free and clear of all debts and liens. [¶] As to construction: [¶] The first disbursement of $87,900, the Court finds insufficient evidence as to use of funds for construction. The Court denies this disbursement. Therefore, [plaintiff] is surcharged $87,900. [¶] $60,000 loan is outside the accounting period, so the Court does not make any findings or orders on this issue. [¶] The Court denies the equity line of credit of $106,000 as insufficient evidence regarding the line of credit's use for the estate. [Plaintiff] is surcharged $106,000 cost for the Chase equity line of credit. [¶] Total of all surcharges- $193,900."

On July 30, 2013 plaintiff filed an ex parte application for an order correcting the May 31, 2013 order. Plaintiff requested the Chase equity line of credit amount be corrected to $99,000 from $106,000. In addition, plaintiff sought correction of the total surcharges from $193,900 to $186,900 to reflect the Chase equity line credit of $99,000. In support of the application, plaintiff submitted the declaration of David Shaver. Mr.

3

Shaver was plaintiff's attorney. Mr. Shaver's declaration states: "As set forth in [plaintiff's] First Amended First and Final Account and Report, and Verified First Supplement thereto . . ., there were three loans taken out against the Angel Street real property by [plaintiff]. [¶] A. A $60,000 GMAC loan which is outside of the accounting period; [¶] B. A $106,00 refinance loan from First Magnus, a portion of which was utilized to pay off the GMAC loan; and [¶] C. A $99,000 Home Equity Loan from [Washington Mutual]/Chase." Mr. Shaver's declaration adds: "Additionally, although Objector, James Maciel, Jr.'s pleadings state the amount of the Chase equity line as being in the amount of $100,000.00 (and the Court has sometimes also referred to such loan as the '$100,000 equity line of credit'), the actual amount of the [Washington Mutual]/Chase credit as reflected in [plaintiff's] First Amended First and Final Account is $99,000."

On October 1, 2013, the probate court held a hearing on: plaintiff's ex parte application; the objector's motion for ruling on trial issue; and the objector's objections to the proposed order settling plaintiff's first amended first and final account and report. The objector did not provide this court with a trial transcript or settled statement, or an agreed statement of the October 1, 2013 hearing. The July 29, 2014 order indicates the probate court corrected its May 31, 2013 minute order on its own motion at the hearing. The equity line of credit was corrected from $106,000 to $99,000. In addition, the total of all surcharges and disallowed disbursements was corrected from $193,900 to $186,900.

The July 29, 2014 order states in pertinent part: "6. Of the total funeral expenses of $8,300.00, the sum of $5,374.00 is allowed, and the balance of $2,926.00 is disallowed. [¶] 7. Accountancy expenses are approved in the amount of $1,150.00. [¶] 8. As to the $87,900 for construction of an addition, the court finds insufficient evidence as to use of funds for construction and disallows such disbursement. [¶] 9. The Court denies the $99,000 Chase equity line of credit as insufficient evidence regarding the line of credit's use for the estate. [Plaintiff] is surcharged $99,000 for such equity line of credit. [¶] 10. The total of all surcharges and/or disallowed disbursements ordered

4

against [plaintiff] is $186,900.00.  [¶]  11.  The Law Offices of Bunt & Shaver, LLP are allowed attorney's fees in the amount of $7,262.50 and costs in the amount of $455.00, payable by the Estate of Joseph Maciel."

## III.  DISCUSSION

### A.  Funeral Expense Surcharge

The objector challenges the probate court's calculation of the total surcharges ordered against plaintiff.  In particular, the objector argues the total surcharges sum of $186,900 fails to include the $2,926 in funeral expenses that is surcharged against plaintiff.  The objector is correct that plaintiff was surcharged $2,926 on funeral expenses.  At the February 27, 2013 hearing, the probate court stated, "The court's going to surcharge and order the sum of $2,926 to be paid by [plaintiff] to the estate for the funeral expenses."  Furthermore, the May 31, 2013 order states:  "4.  The Court finds: funeral expenses to be in the amount of $5,374 and surcharges [plaintiff] $2,926 difference.  [¶]  5.  The Court orders [plaintiff] to pay to the estate, for surcharges for funeral expenses, $2,926."  The July 29, 2014 order disallows $2,926 in funeral expenses but fails to include this amount in the total surcharges of $186,900.  The correct total surcharges is $189,826 comprising of:  $99,000 surcharge for the Chase equity line of credit; $87,900 disallowed disbursement for construction of an addition to the real property; and $2,926 surcharge for funeral expenses.  The July 29, 2014 order is to be corrected to add the $2,926 surcharge for disallowed funeral expenses to the total sum for all surcharges and disallowed disbursements ordered against plaintiff.  The total surcharges and disallowed disbursements shall be corrected to $189,826 from $186,900.  As so modified, the order is affirmed.  (*Estate of Machado* (1921) 186 Cal. 246, 252; *Estate of Adams* (1901) 131 Cal. 415, 420.)

5

B.  Attorney's Fees and Cost Allowance

The objector argues plaintiff's counsel was not entitled to payment of attorney's fees and costs from the estate.  The allowance of attorney's fees for services rendered in the estate management rests in the probate court's discretion.  (*Estate of Duffill* (1922) 188 Cal. 536, 554; *Estate of Parker* (1921) 186 Cal. 671, 672.)  We review the order granting attorney's fees and costs for an abuse of discretion.  (*Estate of Parker, supra*, 186 Cal. at p. 672; *Estate of Adams, supra,* 131 Cal. at pp. 418-419 ["The order of the lower court as to attorneys' fees will not be interfered with, except in case of a plain abuse of discretion."].)

The objector contends the estate should not pay plaintiff's attorney's fees.  According to the objector, no statute permits plaintiff to recover attorney's fees and costs from the estate.  The objector argues plaintiff was never legally appointed trustee and had an obligation to turn the estate over to Mr. Gottes, the legal representative.  But Mr. Gottes was no longer the administrator of the estate because the probate court accepted his resignation on June 12, 2012.  Furthermore, the probate court's April 3, 2012 minute order required plaintiff to account to the objector and David Maciel.  Plaintiff's account and report benefitted the estate's beneficiaries including the objector.  At the February 27, 2013 hearing, the probate court approved the attorney's fees and costs incurred by plaintiff for the accounting.  The trial court explained:  "The record's going to reflect that without Mr. Shaver here, we wouldn't have an accounting, and we wouldn't have been able to proceed, and he has completed the work."

We reject the objector's contention that there is no statutory basis for approving fees and costs to plaintiff's attorney from the estate.  Plaintiff may request compensation of his attorney's services when filing the account. Probate Code section 1064, subdivision (b) provides:  "The filing of an account shall be deemed to include a petition requesting its approval, and may include additional petitions for authorization, instruction or confirmation authorized by the code, including, but not limited to, a request for an order for compensation of the fiduciary and the attorney for the fiduciary."  Under

Probate Code section 1064, subdivision (b), the probate court may order compensation to plaintiff's attorney from the estate. The probate court did not abuse its discretion in allowing attorney's fees and costs to plaintiff's attorney for the accounting. (*Estate of Duffill, supra,* 188 Cal. at pp. 553-554; *Estate of Parker, supra,* 186 Cal. at pp. 672-673.)

## C. Inadequate Record

The objector argues there is conflicting evidence as to the real estate loans and the rent money collected by plaintiff. The objector contends the estate should not be liable for the outstanding loan balances. Allegedly, this is because plaintiff used the loan proceeds for plaintiff's personal benefit. In addition, the objector asserts the Chase equity line of credit is $100,000 and not $99,000. The gravamen of the objector's arguments is that plaintiff acted negligently and is thus not entitled to compensation in any form.

The objector has not met his burden of demonstrating error. An appellate court does not reweigh the evidence, consider the credibility of witnesses or resolve conflicts in testimony or declarations. (*Manson v. Shepherd* (2010) 188 Cal.App.4th 1244, 1264; *Estate of Young* (2008) 160 Cal.App.4th 62, 76.) In *Estate of Young, supra,* 160 Cal.App.4th at page 76, the Fourth Appellate District, Division One held, "In a substantial evidence challenge to a judgment, the appellate court will 'consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings]. [Citations.]' [Citation.]" (Accord, *Manson v. Shepherd, supra*, 188 Cal.App.4th at p. 1264.) Furthermore, a judgment is presumed to be correct and appellant has a duty to provide the reviewing court with an adequate record to demonstrate error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *Williams v. Russ* (2008) 167 Cal.App.4th 1215, 1224; *Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 494; *Fladeboe v. American Isuzu Motors, Inc.* (2007) 150 Cal.App.4th 42, 58.)

7

On February 24, 2015, we requested the parties to brief the effect of objector's failure to designate a reporter's transcript or suitable substitute. We requested briefing as to whether this omission warrants affirmance based on the inadequacy of the record in connection with the objector's negligence arguments. In response, the objector contends he filed a reporter's transcript. But the objector designated only the reporter's transcript of the February 27, 2013 hearing. The objector has not provided us with a reporter's transcript or a settled or agreed statement of the October 1, 2013 hearing. According to the July 29, 2014 order, the probate court corrected its minute order of May 31, 2013 nunc pro tunc at the October 1, 2013 hearing on its own motion. The probate court corrected the reference to the Chase equity line of credit from $106,000 to $99,000. The probate court's modification of the equity line of credit amount to $99,000 is supported by: plaintiff's first amended and final account and report; plaintiff's verified supplement to first amended and final account and report; plaintiff's ex parte application for an order correcting the May 31, 2013 court order; and Mr. Shaver's declaration in support of the ex parte application.

In numerous situations, appellate courts have refused to reach the merits of claims because no reporter's transcript of a pertinent proceeding or a suitable substitute has been provided. (*Walker v. Superior Court* (1991) 53 Cal.3d 257, 273-274 [transfer order]; *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295-1296 [attorney fee motion hearing]; *Ballard v. Uribe* (1986) 41 Cal.3d 564, 574-575 (lead opn. of Grodin, J.) [new trial motion hearing]; *In re Kathy P.* (1979) 25 Cal.3d 91, 102 [hearing to determine whether counsel was waived and minor consented to informal adjudication]; *Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1672 [no record of judge's ruling on an instruction request]; *Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 447 [attorney fee award affirmed where trial transcript not provided]; *Estate of Fain* (1999) 75 Cal.App.4th 973, 992 [no reporter's transcript of surcharge hearing]; *Hodges v. Mark* (1996) 49 Cal.App.4th 651, 657 [nonsuit motion affirmed where reporter's transcript not provided]; *Interinsurance Exchange v. Collins* (1994) 30 Cal.App.4th 1445, 1448 [monetary sanctions hearing]; *Hernandez v. City of Encinitas* (1994) 28

8

Cal.App.4th 1048, 1076-1077 [preliminary injunction hearing]; *Null v. City of Los Angeles* (1988) 206 Cal.App.3d 1528, 1532 [reporter's transcript fails to reflect content of special instructions]; *Buckhart v. San Francisco Residential Rent etc., Bd.* (1988) 197 Cal.App.3d 1032, 1036 [hearing on Code Civ. Proc., § 1094.5 petition]; *Sui v. Landi* (1985) 163 Cal.App.3d 383, 385-386 [order denying preliminary injunction dissolution affirmed based on lack of reporter's transcript]; *Rossiter v. Benoit* (1979) 88 Cal.App.3d 706, 711-712 [demurrer hearing]; *Calhoun v. Hildebrandt* (1964) 230 Cal.App.2d 70, 71-73 [argument to jury not in reporter's transcript]; *Ehman v. Moore* (1963) 221 Cal.App.2d 460, 462-463 [failure to secure reporter's transcript or settled statement as to offers of proof]; *Wetsel v. Garibaldi* (1958) 159 Cal.App.2d 4, 10, disapproved on another point in *Posner v. Grunwald-Marx, Inc.* (1961) 56 Cal.2d 169, 183 [no reporter's transcript of hearing confirming arbitration award].)  Here, as to the issue of alleged misconduct by plaintiff, the objector has failed to provide a transcript or suitable substitute.  Thus, the probate court's orders must be affirmed in connection with the objector's negligence contentions.

## IV. DISPOSITION

The probate court is directed to correct the July 29, 2014 order to add the $2,926 surcharge for disallowed funeral expenses as discussed in the body of the opinion. As corrected, the order is affirmed in its entirety. No costs are awarded in connection with this appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

TURNER, P. J.

We concur:

MOSK, J.

KRIEGLER, J.